FILED

2010 Sep-24  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EDITH RENEE JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:10-CV-2541-VEH** |
| | ) |
| **EASY MONEY CASH CENTERS,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Edith Renee Jones ("Jones"), originally filed this action in the Circuit Court of Jefferson County, Alabama, against Defendants Easy Money Cash Centers ("Easy Money"), Insight Capital, LLC ("Insight"), Jeff Smith, Bill Smith, and several fictitious defendants on or about July 9, 2010.  (Doc. 1 ¶ 1; *see also* Doc. 1 at Ex. A at Compl. at 1).  The lawsuit seeks injunctive relief against Defendants for allegedly violating "a cease and desist order" secured from an arbitrator that subsequently "was made a Judgment of th[e] [state court]" (Doc. 1 at Ex. A at Compl. ¶ 8).

Additionally, the complaint asserts a violation of the Alabama Deferred Presentment Services Act, Section 5-18A-13(k) (Doc. 1 at Ex. A at Compl.¶¶ 17-20)

as well as claims for unjust enrichment (Doc. 1 at Ex. A at Compl.¶¶ 21-22), fraud, concealment, and deceit (*Id.* ¶¶ 23-26), willful, intentional, and malicious violation of court order (*Id.* ¶¶ 27-28), intentional infliction of emotional distress (*Id.* ¶¶ 29-32), invasion of the right of privacy (*Id.* ¶¶ 33-38), and declaratory relief.  (*Id.* ¶¶ 39-40).

Defendant Insight "d/b/a Easy Money Cash Centers" (Doc. 1 at 1) removed the litigation to this court on September 17, 2010, asserting as separate bases for federal jurisdiction:  federal question under 28 U.S.C. § 1331 and diversity under § 1332.  (*Id.* ¶ 4).  Defendants Jeff Smith and Bill Smith joined in this removal on September 17, 2010.  (Doc. 1 at Ex. C).  Because this court concludes that it lacks subject matter jurisdiction premised upon either federal question or diversity (and without regard to any procedural problems that may apply to this removal), it *sua sponte* remands the case to the Circuit Court of Jefferson County.

## II.    SUBJECT MATTER JURISDICTION

### A.    General Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am.*

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal citations omitted). "Accordingly, when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id*. (internal citations omitted). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410 (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18

(1951)) (internal footnotes and citations omitted).  Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Congress has decreed and the Supreme Court has confirmed that—with the express exception of civil rights cases that have been removed—orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review.  More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007) (holding that when "the District Court relied upon a ground

that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

Lastly, the removing party bears the burden of demonstrating that the exercise of federal jurisdiction by the district court over the removed case is appropriate. *See, e.g., Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.") (emphasis added) (citation omitted).

## B.    Federal Question Jurisdiction

"Pursuant to § 1331, district courts have original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." *Miccosukee Tribe of Indians of Florida v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1273 (11th Cir. 2010) (footnote omitted).  As the *Kraus* court further clarified federal question analysis:

> Under the "well-pleaded complaint rule,"
>
> "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States."

5

> *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 2062,
> 156 L. Ed. 2d 1 (2003) (quoting *Louisville & Nashville R.R. Co. v.*
> *Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53, 53 L. Ed. 126 (1908))
> (alteration in original).

*Kraus*, 607 F.3d at 1273 n.8.

In support of its removal petition pursuant to federal question jurisdiction, Insight asserts that "[f]ederal jurisdiction exists under 28 U.S.C. § 1331 because this civil action arises under 'the Constitution, laws, or treaties of the United States.'" (Doc. 1 ¶ 20).  However, merely making such a bold jurisdictional statement without more is ineffective in meeting Insight's burden to show the presence of an actual justiciable federal question.  In particular, Insight points to no specific constitutional or statutory provision that is federally-formed, much less shows how Plaintiff's statement of her case involves any federal claims.

Moreover, to the extent that Insight relies upon the Federal Arbitration Act ("FAA") to support its removal (Doc. 1 at 1), not only is Jones's complaint devoid of any mention of the FAA, but also controlling authority makes it clear that, to the extent Jones's lawsuit does in fact put the FAA into issue, that fact alone does not create federal question jurisdiction.  For example, in *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997), the Eleventh Circuit explained:

> As courts have long held, however, the FAA does not confer subject
> matter jurisdiction on federal courts.  Instead, <u>federal courts must have</u>

6

an independent jurisdictional basis to entertain cases arising under the FAA. The Supreme Court has stated:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.
> *Id.* at 25 n.32, 103 S. Ct. at 942 n.32.

In particular, the Court has ruled that FAA sections 3 and 4 do not confer subject matter jurisdiction on federal courts.

*Baltin*, 128 F.3d at 1469 (emphasis added) (footnote omitted).

Therefore, Insight has failed to satisfy its burden by showing how removal to this court premised upon § 1331 is proper. Accordingly, the court rejects that portion of Insight's removal petition.

C.     **Diversity Jurisdiction**

Insight also bases its removal upon the existence of diversity jurisdiction pursuant to § 1332. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.    Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Here, Insight claims that the diversity of citizenship requirement has been satisfied because the individual defendants, Jeff and Bill Smith "are fraudulently joined in this action." (Doc. 1 ¶ 7).

While Insight asserts that Plaintiff is an Alabama citizen (Doc. 1 ¶ 6), it is both a citizen of Ohio and Delaware (*Id.*), and Bill Smith "is a citizen resident of Florida" and "not a resident citizen domiciled in Alabama" (Doc. 1 ¶¶ 12-13), it makes no allegation about Jeff Smith's citizenship. However, Jeff Smith's affidavit indicates that he is "a resident of the state of Alabama." (Doc. 1 at Ex. B ¶ 1). Additionally, Plaintiff's complaint asserts that Jeff Smith is a citizen of Alabama. (Doc. 1 at Ex. A at Compl. ¶ 4). Therefore, Jeff Smith's presence in the lawsuit, if appropriate, would destroy diversity jurisdiction.

### 2.    Fraudulent Joinder Principles

"[W]hen there is no possibility that the plaintiff can prove a cause of action

against the resident (non-diverse) defendant[,]" fraudulent joinder is established.[1]

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes.  *See id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997).  There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).  The burden of the removing party is a 'heavy one.'  *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[2]

---

[1] Thus, Insight's suggestion that Bill Smith has been fraudulently joined is at odds with the applicable framework because he is a <u>diverse</u> (versus non-diverse) individual defendant.

[2] Under the second prong of the fraudulent joinder test, the court must determine whether Plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction.  No issue related to the second prong exists in this case.  Accordingly, the court limits its analysis to the first prong.

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," *see Crowe*, 113 F.3d at 1538 (citation omitted), <u>requiring clear and convincing evidence and particularity in pleading</u>. *Parks*, 308 F.2d at 478 (citations omitted). Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists. More particularly, the *Crowe* court explained the framework for analyzing fraudulent joinder as:

While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id.* at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id.* '<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court</u>.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also*

*Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there

is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was

11

proper and remand the case to state court.").

### 3.    Application of Fraudulent Joinder Standard

Against the foregoing backdrop, the court now turns to the application of the fraudulent joinder standard in this case.  Here, Insight has wholly failed to explain why Plaintiff has no possibility of a recovery against the non-diverse defendant Jeff Smith under the multiple claims asserted in this litigation, including in particular the one for fraud, concealment, and deceit.  (Doc. 1 at Ex. A at Compl. ¶¶ 23-26).

Instead, Insight's efforts to demonstrate the lack of any valid cause of action against the individual defendants are largely limited to attacking Plaintiff's ability "to enforce the court's decree in Civil Action No. CV-2009-3023 . . . [because] neither of the Smiths was a party to the September 9, 2009 Arbitration Award[.]"  (Doc. 1 ¶ 8).  However, in making this assertion, Insight offers absolutely no legal authority, and the court is certainly not persuaded by such a sweeping and undeveloped pronouncement.  *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

At a minimum, the court believes that there is uncertainty about the scope of

the "cease and desist" judgment that is in place and whether it reaches individuals such as Jeff Smith, in the context of his role as a possible agent for Insight or more specifically, as a purported agent for Insight doing business as Easy Money Cash Centers. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("[T]he district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor.").

Insight also alleges that Bill Smith "was totally dissociated from Insight"[3] "at the time of Ms. Jones's transaction[,]" that "Jeff Smith was a regional manager for Checksmart Financial Company[,]"[4] and that "[n]either was involved in the policy-making, decision-making, or execution of Ms. Jones's loan." (Doc. 1 ¶ 8). However, in this court's view, the affidavit provided by Jeff Smith in support of removal falls short of establishing any of these purported "facts" with the possible exception of his role as a regional manager for Checksmart, much less satisfying the applicable clear

---

[3]   As the court previously observed in n.1, *supra*, because he is a diverse defendant, Insight's reliance upon the purported scope of Bill Smith's role *vel non* is completely irrelevant to the fraudulent joinder inquiry and unnecessarily clouds the jurisdictional evaluation.

[4]   According to Jeff Smith's affidavit, "[o]n March 1, 2010, Checksmart purchased Insight Capital, LLC and became the sole member of Insight Capital, LLC." (Doc. 1 at Ex. B ¶ 5).

and convincing evidentiary standard.[5] (Doc. 1 at Ex. B ¶ 2). Moreover, "[s]tatements by counsel in briefs [or in removal petitions] are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).[6]

Insight also asserts arguments about how doing business as an LLC prevents "the Smiths [from] hav[ing] individual liability for the actions complained of by Plaintiff." (Doc. 1 ¶ 10). However, this position presupposes that neither of the Smiths has engaged in any independent wrongdoing, such as fraud, and is unconvincing.

Therefore, under such circumstances, Insight has simply not met its heavy burden in establishing fraudulent joinder (*i.e.*, the petition to remove lacks <u>both</u> clear and convincing evidence <u>and</u> particularity in pleading), the parties are not diverse due to Jeff Smith's Alabama citizenship,[7] and this case is due to be remanded for lack of

---

[5] The court also has concerns about the instrument's procedural validity. More specifically, the court observes that the first page of the affidavit omits the state and county in which it was executed by Jeff Smith. (Doc. 1 at Ex. B at 1). Additionally, while Jeff Smith has stated that he is a resident of Alabama, the Notary Public has indicated that his affidavit was in fact, sworn to and subscribed before her, on September 16, 2010, <u>in the County of Union, Ohio</u>. (*Id.* at 2 (emphasis added)).

[6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[7] Therefore, the court does not reach the amount in controversy component to diversity jurisdiction.

14

subject matter jurisdiction as neither the existence of federal question nor diversity jurisdiction has been shown.

## III.   CONCLUSION

Thus, as analyzed above, the court lacks subject matter jurisdiction, and this action is due to be remanded to Jefferson County Circuit Court *sua sponte*. Accordingly, an order will be entered remanding the case to the Circuit Court of Jefferson County.[8]

**DONE** and **ORDERED** this the 24th day of September, 2010.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[8] As a result, Insight's Motion to Compel Arbitration and Stay Proceedings (Doc. 4) filed on September 20, 2010, will not be addressed by this court, but rather will be carried with the file for consideration by the state court to which this case will be remanded.